# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

RONALD AND CONLEY KUIPER,

       Plaintiffs,

vs.

INTERNATIONAL FLAVORS &
FRAGRANCES, INC., GIVAUDAN,
INC., FLAVORS OF NORTH
AMERICA, INC., SENSIENT
FLAVORS, INC., THE FLAVOR &
EXTRACT MANUFACTURERS
ASSOCIATION OF THE UNITED
STATES, and THE ROBERTS GROUP,

       Defendants.

No. C06-4009-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING
DEFENDANTS' MOTIONS TO
DISMISS COUNTS II AND III**

---

## TABLE OF CONTENTS

I.  INTRODUCTION AND BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   A.  Procedural Background  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   B.  Factual Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.  LEGAL ANALYSIS  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
   A.  Rule 12(b)(6) Standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
   B.  Pleading Fraud With Particularity . . . . . . . . . . . . . . . . . . . . . . . 16
      1.  Pleading fraud under Rule 9(b)  . . . . . . . . . . . . . . . . . . . 17
      2.  Application of the Rule 9(b) pleading standards  . . . . . . . . 19
      3.  Leave to amend the complaint  . . . . . . . . . . . . . . . . . . . . 21

III.  CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

# I. INTRODUCTION AND BACKGROUND

## A. Procedural Background

On January 30, 2006, plaintiffs Ronald Kuiper and Conley Kuiper ("the Kuipers") filed their Complaint against defendants International Flavors & Fragrances, Inc. ("IFF"), Givaudan Flavors Corp. ("Givaudan"), Flavors of North America, Inc. ("FONA"), Sensient Flavors, Inc. ("Sensient"), the Flavor and Extract Manufacturers Association of the United States ("FEMA"), and the Roberts Group, L.L.C. ("TRG") alleging four causes of action. The four causes of action asserted are for negligence (Count I), fraudulent concealment (Count II), civil conspiracy (Count III), and a combined claim for loss of consortium and medical expenses (Count IV). The Complaint alleges that this court has subject matter jurisdiction by virtue of diversity of citizenship of the parties, 28 U.S.C. § 1332.

Defendants IFF, Givaudan, FONA, and Sensient have each filed motions to dismiss Counts II and III, the fraudulent concealment and civil conspiracy claims found in the Complaint (Doc. Nos. 43, 45, 49, and 52). Because the grounds raised in each defendant's respective motion to dismiss are identical, the court will generally refer to all four motions to dismiss as defendants' motions. Specifically, defendants assert that Count II, the Kuipers' fraudulent concealment claim, should be dismissed for failure to plead fraud with particularity, and that Count III, the Kuipers' civil conspiracy claim, should be dismissed because it is based entirely on the fraudulent concealment claim. The Kuipers filed a timely combined resistance to defendants' motions. Defendants then filed reply briefs in support of their respective motions.

## B. Factual Background

On a motion to dismiss, the court must assume all facts alleged in the Kuipers'

complaint are true, and must liberally construe those allegations. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  Therefore, the following factual background, related to Counts II and III,  is drawn from the Kuipers' complaint in such a manner.

Plaintiffs Ronald Kuiper and Conley Kuiper are husband and wife residing in Sioux City, Iowa.  Ronald Kuiper was employed by the American Popcorn Company in Sioux City, Iowa.  Defendant IFF is a New York corporation with its principal place of business in New York, New York.  Givauden is a Delaware corporation with its principal place of business in Cincinnati, Ohio.  FONA is an Illinois corporation with its principal place of business in Carol Steam, Illinois.  Sensient is a Wisconsin corporation with its principal place of business in Indianapolis, Indiana.  Defendants IFF, Givauden, FONA, and Sensient each design, manufacture, distribute and sell butter flavorings marketed to entities, including the American Popcorn Company.

The butter flavorings sold by defendants IFF, Givaudan, FONA, and Sensient contain diacetyl and/or other volatile organic compounds that can cause human disease and injury.  In the course of his employment at the American Popcorn Company, Ronald Kuiper was exposed to butter flavorings designed, manufactured, distributed and sold by defendants IFF, Givaudan, FONA, and Sensient.  The Kuipers allege that as a result of Ronald Kuiper's exposure he has suffered severe and permanent injury to his person including, bronchiolitis obliterans, severe and progressive damage to the respiratory system, and extreme shortness of breath.  In addition, because of his exposure, Ronald Kuiper's life expectancy has been significantly reduced.

In their fraudulent concealment claim, the Kuipers allege the following with respect to defendant Givaudan:

>    27.    Defendant Givaudan knew, or should have known, that
>    butter flavorings and/or their constituents cause adverse health

3

effects by at least 1991, including, but not limited to, the following:

    a.    Damage to human mucous membranes, and;
    b.    Respiratory disease.

28.    Defendant Givaudan knew or should have known certain information regarding the health hazards of butter flavorings and/or their constituents including, but not limited to, the following:

    a.    By at least 1991, Defendant Givaudan knew that diacetyl was a health hazard when inhaled;

    b.    By at least 1991, Defendant Givaudan knew that the level of diacetyl in areas where butter flavorings are used could and should be monitored through air sampling;

    c.    By at least 1991, Defendant Givaudan knew that diacetyl is a hazard to human mucous membranes;

    d.    By at least 1992, Defendant Givaudan knew of at least three occupational exposures where persons working with Defendant Givaudan's butter flavorings were diagnosed with bronchiolitis obliterans and at least one exposure resulted in death;

    e.    By at least 1993, Defendant Givaudan knew that their butter flavoring workers were experiencing "breathing problems";

    f.    By at least 1993, Defendant Givaudan knew that even a short exposure to its butter flavorings could produce severe respiratory effects;

    g.    By at least 1993, Defendant Givaudan knew that persons working around butter flavorings must wear full-face respirators;

    h.    By at least 1993, Defendant Givaudan knew that diacetyl is a severe respiratory hazard, causing,

4

*inter alia*: respiratory tract injury; focal hyperemia of the lungs; atelectasis; bloody edema of the lungs; bronchial edema, and, emphysema;

i. By at least 1993, Defendant Givaudan knew that diacetyl causes severe lung disease, including emphysema and death;

j. By at least 1993, Defendant Givaudan knew the $LC_{50}$ for diacetyl;

k. By at least 1994, Defendant Givaudan knew that diacetyl is a "potential respiratory exposure" for persons working around butter flavorings;

l. By at least 1994, Defendant Givaudan knew that diacetyl volatilizes above 83F and that potential diacetyl volatilization must be minimized for worker safety;

m. By at least 1994, Defendant Givaudan recognized that butter flavorings should be mixed in a "closed system" to prevent volatilization of diacetyl or other butter flavoring constituents into the air;

n. By at least 1995, Defendant Givaudan knew that their customers were experiencing severe health problems associated with their butter flavorings;

o. By at least 1995, Defendant Givaudan were specifically requested by their customers to "advise all butter users of the danger of butters" and specifically recommend what type of Personal Protective Equipment should be worn;

p. By at least 1995, Defendant Givaudan knew that diacetyl is a "harmful organic vapor";

q. By at least 1995, Defendant Givaudan required its own researchers to sign confidentiality agreements in an effort to conceal known hazards of its butter flavorings from the public;

r. By at least 1996, Defendant Givaudan was aware of all available research regarding diacetyl's

5

<blockquote>

effects on the mucous membranes;

s.      By at least 1996, Defendant Givaudan knew or should have known that the butter flavorings and/or their constituents cause bronchiolitis obliterans;

t.      By at least 2002, Defendant Givaudan agreed with FEMA to affirmatively conceal known hazards of its butter flavorings by providing anti-warnings stating that their butter flavorings were safe, and;

u.      By as late as 2003, Defendant Givaudan's material safety data sheets indicated that their butter flavoring had no health hazard, despite specific knowledge of its severe respiratory health hazards.

</blockquote>

Compl. at ¶¶ 27-28.

Again with respect to their fraudulent concealment claim, the Kuipers allege the following concerning defendant Sensient:

<blockquote>

29.      Defendant Sensient knew, or should have known, that butter flavorings and/or their constituents cause adverse health effects by at least 1991, including, but not limited to, the following:

a.      Damage to human mucous membranes, and;

b,      Respiratory disease.

30.      Defendant Sensient knew or should have known certain information regarding the health hazards of butter flavorings and/or their constituents including, but not limited to, the following:

a.      By at least 1991, Defendant Sensient knew that diacetyl was a health hazard when inhaled;

b.      By at least 1991, Defendant Sensient knew that

</blockquote>

6

the level of diacetyl in areas where butter flavorings are used could and should be monitored through air sampling;

c.  By at least 1991, Defendant Sensient knew that diacetyl is a hazard to human mucous membranes;

d.  By at least 1991, Defendant Sensient had knowledge that employees exposed to their butter flavoring were experiencing eye irritations:

e.  By at least 1993, Defendant Sensient knew that their butter flavoring workers were experiencing "breathing problems";

f.  By at least 1993, Defendant Sensient knew that persons working around butter flavorings must wear full-face respirators;

g.  By at least 1993, Defendant Sensient knew that diacetyl is a serve respiratory hazard, causing, *inter alia*: respiratory tract injury; focal hyperemia of the lungs; atelectasis; bloody edema of the lungs; bronchial edema, and, emphysema;

h.  By at least 1993, Defendant Sensient knew that diacetyl causes severe lung disease, including emphysema and death;

i.  By at least 1993, Defendant Sensient knew the $LC_{50}$ for diacetyl;

j.  By at least 1994, Defendant Sensient knew that diacetyl is a "potential respiratory exposure" for persons working around butter flavorings;

k.  By at least 1994, Defendant Sensient knew that diacetyl volatilizes above 83F and that potential diacetyl volatilization must be minimized for worker safety;

l.  By at least 1994, Defendant Sensient recognized that butter flavorings should be mixed in a "closed system" to prevent volatilization of

7

diacetyl or other butter flavoring constituents into the air;

m. By at least 1995, Defendant Sensient knew that their customers were experiencing severe health problems associated with their butter flavorings;

n. By at least 1995, Defendant Sensient were specifically requested by their customers to "advise all butter users of the danger of butters" and specifically recommend what type of Personal Protective Equipment should be worn;

o. By at least 1995, Defendant Sensient knew that diacetyl is a "harmful organic vapor";

p. By at least 1996, Defendant Sensient was aware of all available research regarding diacetyl's effects on the mucous membranes;

q. By at least 1996, Defendant Sensient knew or should have known that the butter flavorings and/or their constituents cause bronchiolitis obliterans;

r. By at least 2002, Defendant Sensient agreed with FEMA to affirmatively conceal known hazards of its butter flavorings by providing anti-warnings stating that their butter flavorings were safe, and;

s. By as late as 2004, Defendant Sensient's material safety data sheets indicated that their butter flavoring had no health hazard, despite specific knowledge of its severe respiratory health hazards.

Compl. at ¶¶ 29-30.

In addition, again with respect to their fraudulent concealment claim, the Kuipers allege the following concerning defendant FONA:

31. Defendant FONA knew, or should have known, that butter flavorings and/or their constituents cause adverse health

8

effects by at least 1991, including, but not limited to, the following:

    a.    Damage to human mucous membranes, and;
    b.    Respiratory disease.

32.    Defendant FONA knew or should have known certain information regarding the health hazards of butter flavorings and/or their constituents including, but not limited to, the following:

    a.    By at least 1989, Defendant FONA knew that customers and employees exposed to their butter flavorings were experiencing severe eye irritation from their exposure to diacetyl;

    b.    By at least 1991, Defendant FONA knew that diacetyl was a health hazard when inhaled;

    c.    By at least 1991, Defendant FONA knew that the level of diacetyl in areas where butter flavorings are used could and should be monitored through air sampling;

    d.    By at least 1991, Defendant FONA knew that diacetyl is a hazard to human mucous membranes;

    e.    By at least 1993, Defendant FONA knew that their butter flavoring workers were experiencing "breathing problems";

    f.    By at least 1993, Defendant FONA knew that persons working around butter flavorings must wear full-face respirators;

    g.    By at least 1993, Defendant FONA knew that diacetyl is a severe respiratory hazard, causing, *inter alia*: respiratory tract injury; focal hyperemia of the lungs; atelectasis; bloody edema of the lungs; bronchial edema, and, emphysema;

    h.    By at least 1993, Defendant FONA knew that

9

diacetyl causes severe lung disease, including emphysema and death;

i.    By at least 1993, Defendant FONA knew the $LC_{50}$ for diacetyl;

j.    By at least 1994, Defendant FONA knew that diacetyl is a "potential respiratory exposure" for persons working around butter flavorings;

k.    By at least 1994, Defendant FONA knew that diacetyl volatilizes above 83F and that potential diacetyl volatilization must be minimized for worker safety;

l.    By at least 1994, Defendant FONA recognized that butter flavorings should be mixed in a "closed system" to prevent volatilization of diacetyl or other butter flavoring constituents into the air;

m.    By at least 1995, Defendant FONA knew that their customers were experiencing severe health problems associated with their butter flavorings;

n.    By at least 1995, Defendant FONA were specifically requested by their customers to "advise all butter users of the danger of butters" and specifically recommend what type of Personal Protective Equipment should be worn;

o.    By at least 1995, Defendant FONA knew that diacetyl is a "harmful organic vapor";

p.    By at least 1996, Defendant FONA was aware of all available research regarding diacetyl's effects on the mucous membranes;

q.    By at least 1996, Defendant FONA knew or should have known that the butter flavorings and/or their constituents cause bronchiolitis obliterans;

r.    By at least 1998, Defendant FONA knew that diacetyl was a "Hazardous Substance"; and

s.    By as late as 2004, Defendant FONA's material safety data sheets indicated that their butter

> flavoring was only a slight health hazard, despite
> specific knowledge of its severe respiratory
> health hazards.

Compl. at ¶¶ 31-32.

Also with respect to their fraudulent concealment claim, the Kuipers allege the following concerning defendant IFF:

> 33.   Defendant IFF knew, or should have known, that butter
> flavorings and/or their constituents cause adverse health effects
> by at least 1991, including, but not limited to, the following:
>
>   a.   Damage to human mucous membranes, and;
>   b.   Respiratory disease.
>
> 34.   Defendant IFF knew or should have known certain
> information regarding the health hazards of butter flavorings
> and/or their constituents including, but not limited to, the
> following:
>
>   a.   By at least 1991, Defendant IFF knew that
>        diacetyl was a health hazard when inhaled;
>   b.   By at least 1991, Defendant IFF knew that the
>        level of diacetyl in areas where butter flavorings
>        are used could and should be monitored through
>        air sampling;
>   c.   By at least 1991, Defendant IFF knew that
>        diacetyl is a hazard to human mucous
>        membranes;
>   d.   By at least 1993, Defendant IFF knew that their
>        butter flavoring workers were experiencing
>        "breathing problems";
>   e.   By at least 1993, Defendant IFF knew that
>        persons working around butter flavorings must
>        wear full-face respirators;
>   f.   By at least 1993, Defendant IFF knew that

11

diacetyl is a severe respiratory hazard, causing, *inter alia*: respiratory tract injury; focal hyperemia of the lungs; atelectasis; bloody edema of the lungs; bronchial edema, and, emphysema;

g. By at least 1993, Defendant IFF knew that diacetyl causes severe lung disease, including emphysema and death;

h. By at least 1993, Defendant IFF knew the $LC_{50}$ for diacetyl;

i. By at least 1994, Defendant IFF knew that diacetyl is a "potential respiratory exposure" for persons working around butter flavorings;

j. By at least 1994, Defendant IFF knew that diacetyl volatilizes above 83F and that potential diacetyl volatilization must be minimized for worker safety;

k. By at least 1994, Defendant IFF recognized that butter flavorings should be mixed in a "closed system" to prevent volatilization of diacetyl or other butter flavoring constituents into the air;

l. By at least 1995, Defendant IFF knew that their customers were experiencing severe health problems associated with their butter flavorings;

m. By at least 1995, Defendant IFF were specifically requested by their customers to "advise all butter users of the danger of butters" and specifically recommend what type of Personal Protective Equipment should be worn;

n. By at least 1995, Defendant IFF knew that diacetyl is a "harmful organic vapor";

o. By at least 1996, Defendant IFF was aware of all available research regarding diacetyl's effects on the mucous membranes;

p. By at least 1996, Defendant IFF knew or should have known that the butter flavorings and/or their constituents cause bronchiolitis obliterans;

12

q.    By as late as 2000, Defendant IFF's material
      safety data sheets indicated that their butter
      flavoring had no health hazard, despite specific
      knowledge of its severe respiratory health
      hazards, and

r.    By at least 2002, Defendant IFF agreed with
      FEMA to affirmatively conceal known hazards
      of its butter flavorings by providing anti-
      warnings stating that their butter flavorings were
      safe.

Compl. at ¶¶ 33-34.

Finally, in their fraudulent concealment claim, the Kuipers allege the following with

respect to all four defendants:

35.    Despite the fact that Defendants knew that the
butter flavorings and/or their constituents cause adverse health
effects, including severe respiratory disease, they intentionally
and maliciously chose to conceal these facts from the scientific
and medical communities, the government and the public,
including Plaintiff, Ronald Kuiper.

36.    The information concealed by the Defendants
regarding the serious health risks of using their butter
flavorings was material.

37.    Defendants had a duty to disclose such
information to the Plaintiff because, *inter alia*,

a.    Defendants possessed knowledge regarding the
      health effects of butter flavorings and/or their
      constituents that was superior to Plaintiff's
      knowledge;

b.    Defendants had a relationship of trust and/or
      confidence with Plaintiff, and;

c.    other attendant circumstances.

38.    Defendants profited from their fraud by
continuing and increasing the sale of butter flavoring products
which they knew were hazardous to persons deliberately kept

13

ignorant of material facts concerning the true hazards of diacetyl and/or butter flavorings.

Compl. at ¶ 35-38.

## II. LEGAL ANALYSIS

### A. Rule 12(b)(6) Standards

The issue on a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted is not whether a plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence in support of his, her, or its claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *United States v. Aceto Agric. Chem. Corp.*, 872 F.2d 1373, 1376 (8th Cir. 1989). In considering a motion to dismiss under Rule 12(b)(6), the court must assume that all facts alleged by the complaining party are true, and must liberally construe those allegations. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Gross v. Weber*, 186 F.3d 1089, 1090 (8th Cir. 1999) ("On a motion to dismiss, we review the district court's decision de novo, accepting all the factual allegations of the complaint as true and construing them in the light most favorable to [the non-movant]."); *St. Croix Waterway Ass'n v. Meyer*, 178 F.3d 515, 519 (8th Cir. 1999) ("We take the well-pleaded allegations in the complaint as true and view the complaint, and all reasonable inferences arising therefrom, in the light most favorable to the plaintiff."); *Gordon v. Hansen*, 168 F.3d 1109, 1113 (8th Cir. 1999) (same); *Midwestern Machinery, Inc. v. Northwest Airlines*, 167 F.3d 439, 441 (8th Cir. 1999) (same); *Wisdom v. First Midwest Bank*, 167 F.3d 402, 405 (8th Cir. 1999) (same); *Duffy v. Landberg*, 133 F.3d 1120, 1122 (8th Cir.) (same), *cert. denied*, 525 U.S. 821 (1998); *Doe v. Norwest Bank Minn., N.A.*, 107 F.3d 1297, 1303-04 (8th Cir. 1997) (same); *WMX Techs., Inc. v. Gasconade County, Mo.*, 105 F.3d 1195, 1198 (8th Cir. 1997) (same); *First Commercial Trust v. Colt's Mfg. Co.*, 77

14

F.3d 1081, 1083 (8th Cir. 1996) (same).

The court is mindful that, in treating the factual allegations of a complaint as true pursuant to Rule 12(b)(6), the court must "reject conclusory allegations of law and unwarranted inferences." *Silver v. H&R Block, Inc.*, 105 F.3d 394, 397 (8th Cir. 1997) (citing *In re Syntex Corp. Securities Lit.*, 95 F.3d 922, 926 (9th Cir. 1996)); *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990) (the court "do[es] not, however, blindly accept the legal conclusions drawn by the pleader from the facts," citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987), and 5 C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE § 1357, at 595-97 (1969)); *see also LRL Properties v. Portage Metro Hous. Auth.*, 55 F.3d 1097, 1103 (6th Cir. 1995) (the court "need not accept as true legal conclusions or unwarranted factual inferences," quoting *Morgan*, 829 F.2d at 12). Conclusory allegations need not and will not be taken as true; rather, the court will consider whether the *facts* alleged in the plaintiffs' complaint, accepted as true, are sufficient to state a claim upon which relief can be granted. *Silver*, 105 F.3d at 397; *Westcott*, 901 F.2d at 1488.

The United States Supreme Court and the Eighth Circuit Court of Appeals have both observed that "a court should grant the motion and dismiss the action 'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Handeen v. Lemaire*, 112 F.3d 1339, 1347 (8th Cir. 1997) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S. Ct. 2229, 81 L. Ed. 2d 59 (1984)); *accord Conley,* 355 U.S. at 45-46 ("A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his [or her] claim which would entitle him [or her] to relief."); *Meyer*, 178 F.3d at 519 ("The question before the district court, and this court on appeal, is whether the plaintiff can prove any set of facts which would entitle the plaintiff to relief" and "[t]he

15

complaint should be dismissed 'only if it is clear that no relief can be granted under any set of facts that could be proved consistent with the allegations,'" quoting *Frey v. City of Herculaneum*, 44 F.3d 667, 671 (8th Cir. 1995)); *Gordon*, 168 F.3d at 1113 ("We will not dismiss a complaint for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts that would demonstrate an entitlement to relief."); *Midwestern Machinery, Inc.*, 167 F.3d at 441 (same); *Springdale Educ. Ass'n v. Springdale Sch. Dist.*, 133 F.3d 649, 651 (8th Cir. 1998) (same); *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 546 (8th Cir. 1997) (same); *Doe*, 107 F.3d at 1304 (same); *WMX Techs., Inc.*, 105 F.3d at 1198 (same). Rule 12(b)(6) does not countenance dismissals based on a judge's disbelief of a complaint's factual allegations. *Neitzke v. Williams*, 490 U.S. 319, 327 (1989). Thus, "[a] motion to dismiss should be granted as a practical matter only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." *Frey*, 44 F.3d at 671 (internal quotation marks and ellipses omitted); *accord Parnes*, 122 F.3d at 546 (also considering whether there is an "insuperable bar to relief" on the claim). With these standards in mind, the court turns to consideration of defendants' motions to dismiss Counts II and III.

## B. Pleading Fraud With Particularity

Defendants assert that the Kuipers have failed to plead their fraudulent concealment and civil conspiracy claims with sufficient particularity as required by Federal Rule of Civil Procedure 9(b),[1] and, therefore, have failed to state a claim upon which relief can

---

[1]Federal Rule of Civil Procedure Rule 9(b) provides as follows:

(continued…)

16

be granted. The Kuipers counter that their fraudulent concealment and civil conspiracy claims are sufficient to meet the standards of Rule 9(b). The court, therefore, must determine whether the Kuipers have pleaded their fraud based claims with sufficient particularity in their Complaint.

### 1. Pleading fraud under Rule 9(b)

This court has articulated the standards for pleading fraud with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure in a number of prior decisions. *See Remmes v. International Flavors & Fragrances, Inc.*, 389 F. Supp. 2d 1080, 1087-88 (N.D. Iowa 2005); *Schuster v. Anderson*, 378 F. Supp. 2d 1070, 1086 (N.D. Iowa 2005); *Iowa Health Sys. v. Trinity Health Corp.*, 177 F. Supp. 2d 897, 914 (N.D. Iowa 2001); *Wright v. Brooke Group, Ltd.*, 114 F. Supp. 2d 797, 832-33 (N.D. Iowa 2000); *Doe v. Hartz*, 52 F. Supp.2d 1027, 1055 (N.D. Iowa 1999); *Brown v. North Cent. F.S., Inc.*, 987 F. Supp. 1150, 1155-57 (N.D. Iowa 1997); *Brown v. North Cent. F.S., Inc.*, 173 F.R.D. 658, 664-65 (N.D. Iowa 1997); *North Cent. F.S., Inc. v. Brown*, 951 F. Supp. 1383, 1407-08 (N.D. Iowa 1996); *DeWit v. Firstar Corp.*, 879 F. Supp. 947, 970 (N.D. Iowa 1995). Thus, only a brief discussion of these matters is required here.

Rule 9(b) of the Federal Rules of Civil Procedure "'requires a plaintiff to allege with particularity the facts constituting the fraud.'" *Brown*, 987 F.Supp. at 1155 (quoting

---

[1](…continued)

> (b) **Fraud, Mistake, Condition of the Mind**. In all averments of fraud or mistake, the circumstances constituting the fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

FED. R. CIV. P. 9(b).

*Independent Business Forms v. A-M Graphics*, 127 F.3d 698, 703 n.2 (8th Cir. 1997)).

"'When pleading fraud, a plaintiff cannot simply make conclusory allegations.'" *Id.* (quoting *Roberts v. Francis*, 128 F.3d 647, 651 (8th Cir.1997)). In *Commercial Property Inv., Inc. v. Quality Inns Int'l, Inc.*, 61 F.3d 639 (8th Cir. 1995), the Eighth Circuit Court of Appeals explained:

> Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." "'Circumstances' include such matters as the time, place and content of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." *Bennett v. Berg*, 685 F.2d 1053, 1062 (8th Cir. 1982), *adhered to on reh'g*, 710 F.2d 1361 (8th Cir.), *cert. denied*, 464 U.S. 1008, 104 S.Ct. 527, 78 L.Ed.2d 710 (1983). Because one of the main purposes of the rule is to facilitate a defendant's ability to respond and to prepare a defense to charges of fraud, *Greenwood v. Dittmer*, 776 F.2d 785, 789 (8th Cir. 1985), conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule. *In re Flight Transp. Corp. Sec. Litig.*, 593 F. Supp. 612, 620 (D. Minn. 1984).

*Commercial Property*, 61 F.3d at 644; *see United States ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556 (8th Cir. 2006) ("To satisfy the particularity requirement of Rule 9(b), the complaint must plead such facts as the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result."); *Roberts*, 128 F.3d at 651 (noting that factors a court should examine in determining whether the "circumstances" constituting fraud are stated with particularity under Rule 9(b) "include the time, place, and contents of the alleged fraud; the identity of the person allegedly committing fraud; and what was given up or obtained by the alleged fraud.").

18

However, the Eighth Circuit Court of Appeals has also noted that this rule of pleading is to be interpreted "'in harmony with the principles of notice pleading.'" *Schaller Tel. Co. v. Golden Sky Sys., Inc.*, 298 F.3d 736, 746 (8th Cir. 2002) (quoting *Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 920 (8th Cir. 2001). That is, "[a]lthough a pleading alleging fraud need not provide anything more than notice of the claim, it must contain 'a higher degree of notice, enabling the defendant to respond specifically, at an early stage of the case, to potentially damaging  allegations of immoral and criminal conduct.'" *Id.* (quoting *Abels*, 259 F.3d at 920).

### 2.     *Application of the Rule 9(b) pleading standards*

Defendants contend that the Kuipers have failed to satisfy Rule 9(b)'s particularity requirements because the Kuipers continue to refer to fraud by a collective group of defendants instead of alleging individual acts by a particular defendant, and, even when a specific defendant is identified, the Kuipers fail to plead the who, what, where, and how of the alleged fraudulent concealment.  In response, the Kuipers counter that they have satisfied Rule 9(b)'s particularity requirement.

In *Remmes v. International Flavors & Fragrances, Inc.*, 389 F. Supp. 2d 1080 (N.D. Iowa 2005), this court addressed these same issues in another case concerning a worker in a popcorn plant who was allegedly injured through these same four defendants' alleged non-disclosure of the deleterious effects of diacetyl in the butter flavorings.  *Id.* at 1082-83.  In *Remmes*, this court observed that, "where a plaintiff's complaint 'accuses multiple defendants of participating in the scheme to defraud, the plaintiffs must take care to identify which of them was responsible for the individual acts of fraud.'" *Id.* at 1088. This court went on to hold that because the group pleading doctrine was not available in such litigation and because the actions of each defendant were left unspecified, the plaintiff in *Remmes* had failed to meet the specificity requirements of Rule 9(b) as to his claim of

19

fraudulent concealment. Thus, the court dismissed the fraudulent concealment claim for failure to plead fraud with specificity. *Id.* at 1090. In addition, because the civil conspiracy claim in *Remmes* was based entirely on the fraudulent concealment claim, the court also found that the civil conspiracy claim must be dismissed. *Id.* The court, however, permitted the plaintiff in *Remmes* to file an amended complaint in order to adequately plead fraud in Counts II and III pursuant to Rule 9(b). After Remmes amended his complaint for the second time and alleged the same three causes of action that were advanced in his First Amended Complaint, namely negligence, fraudulent concealment and civil conspiracy, defendants IFF, Givaudan and Sensient again filed motions to dismiss the fraudulent concealment and civil conspiracy claims found in the Second Amended Complaint. The court again granted defendants' respective motions to dismiss the fraudulent concealment and civil conspiracy claims, finding again that the plaintiff in *Remmes* had not plead fraud with the particularity required by Rule 9(b). *See Remmes v. International Flavors & Fragrances, Inc.*, C04-4061-MWB (N.D. Iowa filed Sept. 26, 2006).

Here, not only is the court facing the identical issues addressed in *Remmes*, but nearly identical pleadings. Indeed, it appears that plaintiffs' counsel, who were also involved in *Remmes*, used the pleadings in *Remmes* as an exact template for the pleadings in this litigation. Because the pleadings in this matter share the same defects identified in *Remmes*, the court has little difficulty concluding that the Kuipers have failed to meet the specificity requirements of Rule 9(b) as to their claim of fraudulent concealment found in Count II. Thus, Count II must be dismissed for failure to plead fraud with particularity. Moreover, the court concludes that the civil conspiracy claim found in Count III must also be dismissed because that claim is based entirely on the fraudulent concealment claim alleged in Count II. Therefore, the court grants defendants' motions to dismiss Counts II

20

and III of the Complaint.

### 3. *Leave to amend the complaint*

The Kuipers assert that justice requires that they be permitted leave to amend their complaint. Although a plaintiff is usually permitted to amend the complaint to replead fraud with particularity, see *Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1435 (3rd Cir. 1997); *Luce v. Edelstein*, 802 F.2d 49, 56-57 (2nd Cir. 1986), here, because plaintiffs' counsel has already had six opportunities to plead fraud with particularity in this, *Remmes*, and a third case pending before this court, *Weimer v. International Flavors & Fragrances, Inc.*, C05-4138-MWB (N.D. Iowa), which concerns these same issues regarding another worker in yet another popcorn plant who was allegedly injured through defendant IFF's alleged non-disclosure of the deleterious effects of diacetyl in its butter flavorings, the court finds that an effort to replead would be futile. Therefore, the court denies the Kuipers' request for leave to amend the claims contained in Counts II and III of their Complaint.

## III. CONCLUSION

For the reasons addressed above, the court concludes that the Kuipers have not plead fraud with the particularity required by Rule 9(b). Thus, defendants' motions to dismiss Counts II and III of the Complaint are granted and those counts are dismissed in their entirety.

**IT IS SO ORDERED.**

**DATED** this 31st day of January, 2007.

MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA