**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

RONALD AND CONLEY KUIPER,

        Plaintiffs,

vs.

GIVAUDAN, INC.,

        Defendant.

No. C06-4009-MWB

**AMENDED MEMORANDUM
OPINION AND ORDER
REGARDING THE PARTIES'
MOTIONS IN LIMINE**

_____

**TABLE OF CONTENTS**

**I. INTRODUCTION AND BACKGROUND** . . . . . . . . . . . . . . . . . . . . . . . . 2

**II. LEGAL ANALYSIS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    **A. Rule 104** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    **B. Applicable Standards** . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    **C. Plaintiffs' Motion In Limine** . . . . . . . . . . . . . . . . . . . . . . . 7
    **D. Givaudan's Unified Motion In Limine** . . . . . . . . . . . . . . . . . 10
        **1.** **Risks to consumers** . . . . . . . . . . . . . . . . . . . . . . . 11
        **2.** **Health conditions of other American Pop Corn employees** . . 12
        **3.** **Evidence regarding Givaudan employees** . . . . . . . . . . . . 13
        **4.** **Evidence regarding other cases** . . . . . . . . . . . . . . . . . 14
        **5.** **Evidence of other hazardous products or substances** . . . . . . 16
        **6.** **Evidence of lung transplants** . . . . . . . . . . . . . . . . . . . 16
        **7.** **Cumulative evidence** . . . . . . . . . . . . . . . . . . . . . . . 16
        **8.** **Non-Medical opinions of Dr. Egilman** . . . . . . . . . . . . . 18
            **a.** **Zealous advocate or objective expert?** . . . . . . . . . . 18
            **b.** **Expert testimony on corporate ethics and actions** . . . 21
        **9.** **BASF Study** . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
        **10.** **International Bakers Services litigation evidence** . . . . . . . . 23
        **11.** **Argument regarding exposure to diacetyl** . . . . . . . . . . . . 25
        **12.** **Argument regarding punitive damage allocation** . . . . . . . . 25

       *13.     Bifurcation of evidence* . . . . . . . . . . . . . . . . . . . . . . . . . 26
    *E.  Givaudan's Motion In Limine Regarding Mark Rigler* . . . . . . . . . . . 29

**III. CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

## I.  INTRODUCTION AND BACKGROUND

On January 30, 2006, plaintiffs Ronald Kuiper and Conley Kuiper ("the Kuipers")
filed their Complaint against defendant Givaudan Flavors Corp. ("Givaudan") alleging
causes of action for negligence (Count I), fraudulent concealment (Count II), civil
conspiracy (Count III), and a combined claim for loss of consortium and medical expenses
(Count IV).[1]  The Complaint alleges that this court has subject matter jurisdiction by virtue
of diversity of citizenship of the parties, 28 U.S.C. § 1332.  The Kuipers' lawsuit alleges
that Ronald Kuiper developed a respiratory disease, bronchiolitis obliterans, as a result of
his exposure to butter flavorings while he was employed at the American Pop Corn
Company ("American Pop Corn") plant in Sioux City, Iowa.  Defendant Givaudan
subsequently filed a motion to dismiss Counts II and III, the fraudulent concealment and

---

[1]In addition to Givaudan, the Kuipers also named as defendants International
Flavors & Fragrances, Inc. ("IFF"), Flavors of North America, Inc. ("FONA"), Sensient
Flavors, Inc. ("Sensient"), the Flavor and Extract Manufacturers Association of the United
States ("FEMA"), and the Roberts Group, L.L.C. ("TRG").  These defendants have all
been dismissed from this case.

civil conspiracy claims found in the Complaint. Specifically, defendant Givaudan asserted that Count II, the Kuipers' fraudulent concealment claim, should be dismissed for failure to plead fraud with particularity, and that Count III, the Kuipers' civil conspiracy claim, should be dismissed because it is based entirely on the fraudulent concealment claim. The court granted defendant Givaudan's motion to dismiss and dismissed both Counts II and III of the Complaint.

The parties have each filed motions in limine in this case. The Kuipers have filed a motion in limine (Dkt. No. 252) in which they seek the exclusion of evidence of Ronald Kuiper's allegedly dirty living conditions. Defendant Givaudan has filed a Unified Motion In Limine (Dkt. No. 326) in which it seeks the exclusion or limitation of the following evidence: (1) evidence of claims by consumers or of the alleged risks to consumers; (2) evidence regarding the health conditions of other American Pop Corn Company employees; (3) evidence regarding Givaudan employees; (4) evidence of other cases brought against or resolved by Givaudan; (5) evidence of other allegedly hazardous products or substances; (6) evidence regarding lung transplantation; (7) cumulative evidence regarding medical condition, diagnosis, prognosis and causation; (8) non-medical opinions of Dr. David Egilman; (9) argument that an unpublished 1993 study conducted by BASF provides notice; (10) evidence regarding the International Bakers Services litigation; (11) evidence or argument that there is no safe level of exposure to diacetyl; (12) evidence or argument regarding Iowa's law on the allocation of punitive damages; and, (13) evidence regarding the net worth or financial condition of Givaudan. Defendant Givaudan has also filed a motion in limine to exclude the opinions and testimony of the Kuipers' expert witness, Mark. W. Rigler (Dkt. No. 331). The parties have each filed responses to the other's motions in limine.

Oral arguments have been requested on some or all of these motions. However, the

court's crowded schedule has not permitted the timely scheduling of such oral arguments, and the court finds that all of the motions have been extensively briefed, so that it is unlikely that oral arguments will enhance the court's understanding of the issues presented. Therefore, the motions are deemed fully submitted on the written submissions.

## II.  LEGAL ANALYSIS

### A.  Rule 104

As a preliminary matter, the court notes that Rule 104 of the Federal Rules of Evidence provides, generally, that "[p]reliminary questions concerning . . . the admissibility of evidence shall be determined by the court. . . ." FED. R. EVID. 104.  Such preliminary questions may depend upon such things as whether the factual conditions or legal standards for the admission of certain evidence have been met.  *See id.*, Advisory Committee Notes, 1972 Proposed Rule.  This rule, like the other rules of evidence, must be "construed to secure fairness in administration, elimination of unjustifiable expense and delay, and promotion of growth and development of the law of evidence to the end that truth may be ascertained and proceedings justly determined." FED. R. EVID. 102.  The court concludes that preliminary determination of the admissibility of evidence presented or challenged in the parties' respective motions in limine will likely serve the ends of a fair and expeditious presentation of issues to the jury.  Therefore, the court turns to consideration, in turn, of the admissibility of the evidence put at issue in the parties' motions in limine.

### B.  Applicable Standards

The parties base their motions in limine frequently on the alleged irrelevance or prejudicial nature of certain challenged categories of evidence.  Rule 401 of the Federal

Rules of Evidence defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED. R. EVID. 401. Rue 402 provides that "[a]ll relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority" and that "[e]vidence which is not relevant is not admissible." FED. R. EVID. 402. Rule 403 provides for exclusion of even relevant evidence on various grounds, as follows:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

FED. R. EVID. 403.

The Eighth Circuit Court of Appeals has explained "prejudice" within the meaning of Rule 403 as follows:

> Under Rule 403, district courts have broad discretion to assess unfair prejudice, and are reversed only for an abuse of discretion. *United States v. Henderson*, 416 F.3d 686, 693 (8th Cir. 2005), *cert. denied*, 546 U.S. 1175, 126 S. Ct. 1343, 164 L. Ed. 2d 57 (2006). Rule 403 "does not offer protection against evidence that is merely prejudicial in the sense of being detrimental to a party's case. The rule protects against evidence that is unfairly prejudicial, that is, if it tends to suggest decision on an improper basis." *Wade v. Haynes*, 663 F.2d 778, 783 (8th Cir. 1981), *aff'd sub nom. Smith v. Wade*, 461 U.S. 30, 103 S. Ct. 1625, 75 L. Ed. 2d 632 (1983).

*United States v. Myers*, 503 F.3d 676, 681 (8th Cir. 2007); *United States v. Farrington*, 499 F.3d 854, 858-59 (8th Cir. 2007). The Advisory Committee Notes to Rule 403

explain that a decision on an "improper basis" is "commonly, though not necessarily, an emotional one." FED. R. EVID. 403, Advisory Committee Notes; *see also United States v. Jiminez*, 487 F.3d 1140, 1145 (8th Cir. 2007) (quoting this note); *United States v. Dierling*, 131 F.3d 722, 730-31 (8th Cir. 1997) (considering whether evidence was unfairly prejudicial, because it might lead to a decision on an improper basis, where it purportedly had no connection to the charged offense and revealed grisly or violent behavior that made the defendant appear "dangerous"). Unfairly prejudicial evidence has also been described as evidence that is "'so inflammatory on [its] face as to divert the jury's attention from the material issues in the trial.'" *United States v. Adams*, 401 F.3d 886, 900 (8th Cir. 2005) (quoting *United States v. Shoffner*, 71 F.3d 1429, 1433 (8th Cir. 1995)). The Advisory Committee's Notes to Rule 403 also explain that a determination on unfair prejudice should include consideration of the possible effectiveness or lack of effectiveness of a limiting instruction. FED. R. EVID. 403, Advisory Committee Notes; *see also United States v. Hawthorne*, 235 F.3d 400, 404 (8th Cir. 2000) (finding that relevance of evidence was not outweighed by any potential prejudice within the meaning of either Rule 404(b) or Rule 403 where the evidence was used for a limited purpose and the district court gave a limiting instruction).

Rule 403 also permits exclusion of relevant evidence on the basis of its potential for confusion of the issues. FED. R. EVID. 403. The Eighth Circuit Court of Appeals has explained, "'Confusion of the issues warrants exclusion of relevant evidence if admission of the evidence would lead to litigation of collateral issues.'" *Fireman's Fund Ins. Co. v. Thien*, 63 F.3d 754, 758 (8th Cir. 1995) (quoting *United States v. Dennis*, 625 F.2d 782, 796-97 (8th Cir. 1980)).

This court will consider the parties' motions in limine in turn in light of these standards, beginning with the Kuipers' motion.

### C.  Plaintiffs' Motion In Limine

The Kuipers' motion in limine seeks the exclusion of evidence of Ronald Kuiper's allegedly "filthy" living conditions.  The medical records at issue in this motion in limine were prepared by Ronald Kuiper's treating physician, Dr. Curt D. Farrell, following Ronald Kuiper's hospitalization in March of 2001.   In one record, Dr. Farrell writes, in pertinent part, that:

> With regard to his pulmonary status, he has improved significantly since being here.  His daughter states that their house is basically, the word they have used to describe it is filthy which may be contributing somewhat to his pulmonary problems.  Daughter has insisted that he will not be going home until the house is thoroughly cleaned.

Progress Note, Plaintiff's Ex. No. 1, Dkt. No. 252-4.  In another record, Dr. Farrell notes, in pertinent part, that:  "Apparently, his home environment is quite dirty with animal feces, etc., in the house."  Discharge Summary, Plaintiff's Ex. No. 2 at 1, Dkt. No. 252-5.  Later in the same document, Dr. Farrell writes, in pertinent part, that:

> With regards to his chronic pulmonary disease, he has had longstanding problems with his lungs.  Actually, this was improved through hospitalization, and the daughters feel that this may be due to his home environment, which, apparently, is quite dirty and, as they say, filthy at home.

Discharge Summary, Plaintiff's Ex. No. 2 at 3, Dkt. No. 252-5. The Kuipers contend that defendant Givaudan may attempt to introduce evidence of Ronald Kuiper's allegedly "dirty" living conditions to imply that his living conditions were related to his respiratory condition.  The Kuipers contend that such evidence, contained in the medical record of Dr. Farrell, should be excluded because it constitutes hearsay.  The Kuipers further assert that the evidence is inadmissible under Federal Rule of Evidence 602 because Dr. Farrell did not have personal knowledge of the living conditions.  The Kuipers also contend that such

evidence is irrelevant and must be excluded under Federal Rules of Evidence 401 and 402. Alternatively, the Kuipers assert that if such evidence is relevant it must be excluded under Federal Rule of Evidence 403 because its probative value is substantially outweighed by the danger of unfair prejudice. In response, defendant Givaudan asserts that the evidence contained in the medical records of Ronald Kuiper's treating physician, Dr. Farrell, are relevant and highly probative concerning the issue of causation, an issue which is hotly contested in this case. Moreover, while conceding that the medical records contain hearsay statements, defendant Givaudan, nonetheless, contends that they are admissible pursuant to the hearsay exception contained in Federal Rule of Evidence 803(4).

Although hearsay is generally inadmissible, *see* FED. R. EVID. 802, the Federal Rules of Evidence contain a number of exceptions to the hearsay prohibition. *See* FED. R. EVID. 803, 804. One such exception is found in Rule 803(4), which provides that:

> Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

FED. R. EVID. 803(4). This rule "is widely accepted as a firmly rooted hearsay exception." *United States v. Sumner,* 204 F.3d 1182, 1185 (8th Cir. 2000). This exception to the hearsay rule is premised on the theory that "a statement made in the course of procuring medical services, where the declarant knows that a false statement may cause misdiagnosis or mistreatment, carries special guarantees of credibility." *White v. Illinois,* 502 U.S. 346, 356 (1992); *see United States v. Bercier*, 506 F.3d 625, 631 (8th Cir. 2007) (quoting *White,* 502 U.S. at 356); *United States v. Wright*, 340 F.3d 724, 732 n.5 (8th cir. 2003) (same).

The Eighth Circuit Court of Appeals has developed a two-part test to determine

whether such statements are admissible. First, the declarant's motive in making the statement must be consistent with the purpose of promoting treatment and, second, the content of the statement must be such as is reasonably relied on by a doctor in treatment or diagnosis. *See Bercier*, 506 F.3d at 631; *United States v. Turning Bear*, 357 F.3d 730, 738 (8th Cir. 2004); *Sumner,* 204 F.3d at 1185; *Lovejoy v. United States,* 92 F.3d 628, 632 (8th Cir. 1996); *United States v. Longie,* 984 F.2d 955, 959 (8th Cir. 1993); *United States v. Renville,* 779 F.2d 430, 436 (8th Cir. 1985). The court's analysis of the statements here is made problematic by the fact that the declarant, the Kuipers' daughter, Vickey Barnes, does not recall using the word "filthy" in describing her parents house and the treating physician, Dr. Farrell, has no memory of the conversation. Barnes recalled telling Dr. Farrell that her father's house was "cluttered" and that she mentioned this to Dr. Farrell because she was concerned about her father's safety and the danger of him falling. Barnes Dep. at 47, Plaintiff's Ex. No. 3 at 3, Dkt. No. 252-6. After review of the record, this court is satisfied that Vicky Barnes's motive in making her statements to Dr. Farrell was for the purpose of aiding her father's treating physician in his diagnosis and treatment of her father.[2] *See Renville,* 779 F.2d at 436-39. Moreover, it is clear that Dr. Farrell relied upon Barnes's statement in his treatment and diagnosis of Ronald Kuiper. Dr. Farrell noted that the conditions at his home "may be contributing somewhat to his pulmonary problems." Progress Note, Plaintiff's Ex. No, 1, Dkt. No. 252-4. Accordingly, references in Ronald Kuiper's medical records to "filthy" living conditions are admissible hearsay under Rule 803(4).

The Kuipers further argue this evidence is irrelevant and must be excluded under

---

[2]Whether Barnes referred to her father's house as being "filthy"or "cluttered" is a question for the jury to determine.

Federal Rules of Evidence 401 and 402. Defendant Givaudan asserts that this evidence is relevant to the issue of the cause of Ronald Kuiper's pulmonary problems. The court notes that Dr. Farrell indicated in Ronald Kuiper's medical records that his living conditions might be a contributory factor in his pulmonary problems. As such, it is clearly relevant. Alternatively, the Kuipers assert that if such evidence is relevant it must be excluded under Federal Rule of Evidence 403 because its probative value is substantially outweighed by the danger of unfair prejudice. The Kuipers argue that the jury may dislike them for the way they kept their home and therefore cause the jury to decide this case on an improper basis. The court does not share the Kuipers' concern that the introduction of this evidence will unfairly prejudice them. Moreover, the evidence in question here is of a kind that the court believes is susceptible to a limiting instruction. FED. R. EVID. 403, Advisory Committee Notes (explaining that a determination on unfair prejudice should include consideration of the possible effectiveness or lack of effectiveness of a limiting instruction). As the Eighth Circuit Court of Appeals has explained, "When the court gives a limiting instruction, [the appellate courts] assume that the jury followed the instruction." *White v. Honeywell, Inc.*, 141 F.3d 1270, 1278 (8th Cir. 1998). Thus, to the extent the Kuipers are concerned that the jury may misuse this evidence, the Kuipers are free to request a limiting jury instruction regarding this evidence. Therefore, the court denies the Kuipers' motion in limine.

### D. *Givaudan's Unified Motion In Limine*

Defendant Givaudan's Unified Motion in Limine seeks the exclusion or limitation of the following evidence: (1) evidence of claims by consumers or of the alleged risks to consumers; (2) evidence regarding the health conditions of other American Pop Corn Company employees; (3) evidence regarding Givaudan employees; (4) evidence of other

cases brought against or resolved by Givaudan; (5) evidence of other allegedly hazardous products or substances; (6) evidence regarding lung transplantation; (7) cumulative evidence regarding medical condition, diagnosis, prognosis and causation; (8) non-medical opinions of Dr. David Egilman; (9) argument that an unpublished 1993 study conducted by BASF provides notice; (10) evidence regarding the International Bakers Services litigation; (11) evidence or argument that there is no safe level of exposure to diacetyl; (12) evidence or argument regarding Iowa's law on the allocation of punitive damages; and, (13) evidence regarding the net worth or financial condition of Givaudan. The court will consider the admissibility of these categories of evidence *seriatim*.

### 1. Risks to consumers

As to the first category of evidence, defendant Givaudan asserts that the Kuipers should be precluded from contending or offering evidence that consumers of microwave popcorn are at risk of health effects. Defendant Givaudan specifically seeks to preclude the Kuipers from referring to three lawsuits that have been brought by plaintiffs' counsel involving the alleged injuries to consumers of microwave popcorn. Because of the dissimilar exposure settings between this case, an occupational exposure case, and the consumer cases, exposure resulting from the popping of microwave popcorn, defendant Givaudan contends that such evidence is irrelevant and must be excluded under Federal Rules of Evidence 401 and 402. Defendant Givaudan also asserts that such evidence must be excluded under Federal Rule of Evidence 403 because of the danger of invoking an improper emotional response from the jurors. The Kuipers assert that such evidence is relevant to the central issue in this case, whether airborne exposure to butter flavorings containing diacetyl causes damage to human lungs.

At this juncture, the court is not in a position to rule on the admissibility of such evidence. The court's analysis on this point is made problematic by the fact that neither

party has directed the court to a specific exhibit or item of evidence whose admissibility is at issue.[3] However, the court finds that defendant Givaudan has failed to demonstrate that, in general, the challenged evidence is irrelevant. *See* FED. R. EVID. 402 ("Evidence which is not relevant is not admissible," but "[a]ll relevant evidence is admissible, except as otherwise provided. . . ."). To the extent that consumers of microwave popcorn have suffered bronchiolitis obliterans from their airborne exposure to butter flavorings containing diacetyl, the active ingredient at the center of this litigation, such evidence may well prove relevant to the issue of whether Ronald Kuiper's exposure to butter flavorings containing diacetyl caused or contributed to his pulmonary condition. However, the record before the court does not contain sufficient information or details regarding those consumers of microwave popcorn who have allegedly suffered bronchiolitis obliterans from their airborne exposure to butter flavorings containing diacetyl to permit the court to rule at this time as to the admissibility of such evidence. Therefore, this portion of defendant Givaudan's motion in limine is denied.

### 2. *Health conditions of other American Pop Corn employees*

Defendant Givaudan also seeks to preclude the Kuipers from offering evidence of the health conditions of other employees of the American Pop Corn plant in Sioux City on the grounds that the introduction of such evidence would be misleading, and any probative value of it is substantially outweighed by the danger of unfair prejudice. The Kuipers respond that they intend to offer a health hazard evaluation report generated by the National Institute of Occupational Safety & Health ("NIOSH"), HETA #2001-0474-2943, concerning its investigation of the American Pop Corn plant and contend that this report

---

[3]The court finds defendant Givaudan's lack of specificity here, and at other points in its motion in limine, shocking given its general proclivity to produce profligate pleadings.

is relevant to the question of whether diacetyl causes lung disease.[4]

The court has reviewed the NIOSH report at issue and concludes that it is relevant to the issues in this case.[5]  Specifically, the NIOSH report details NIOSH's findings regarding air concentrations of butter flavoring chemicals at several locations in the American Pop Corn plant as well as detailing the testing results of workers' lung functions. NIOSH Health Hazard Evaluation Report HETA #2001-0474-2943 at 6-10, Defendant's Ex. No. 1, Dkt. No. 323-5.  In addition, the court concludes that the probative value of this report is not substantially outweighed by the danger of unfair prejudice.  Therefore, this portion of defendant Givaudan's motion in limine is denied with respect to the relevance of the NIOSH Health Hazard Evaluation Report HETA #2001-0474-2943.

### 3.   *Evidence regarding Givaudan employees*

Defendant Givaudan further seeks to preclude the Kuipers from offering evidence regarding the health conditions of employees of Givaudan and Tastemaker, a company acquired by Givaudan in 1997, as well as evidence of an investigation of health conditions conducted by Givaudan beginning in 1992.  Defendant Givaudan asserts that such evidence is inadmissible due to substantial dissimilarities in the operations of Givaudan's flavoring plant and the American Pop Corn plant.  In addition, defendant Givaudan contends that admitting evidence of these workers' health conditions is irrelevant, will result in mini-trials causing this trial to be prolonged and is likely to confuse the jury and unfairly

---

[4]NIOSH is the federal agency responsible for conducting research and making recommendations for the prevention of work-related injury and illness. 29 U.S.C. § 671(c)(1).  NIOSH is part of the Centers for Disease Control and Prevention (CDC) in the Department of Health and Human Services.  *See generally* www.cdc.gov/NIOSH/about.html

[5]The NIOSH report is found at Docket No. 323-5.

prejudice Givaudan.

In response, the Kuipers assert that approximately nine Givaudan employees were diagnosed with bronchiolitis obliterans between 1995 and 1996, and that several of these employees complained of breathing problems when working with diacetyl and/or butter flavoring. The Kuipers argue that evidence that Givaudan's own employees suffered from the same disease as Ronald Kuiper and were working with the same chemicals as him is relevant to the issue of Givaudan's notice regarding the dangers associated with diacetyl. The court concludes that evidence of Givaudan's employees health conditions is relevant to the issue of notice and Givaudan's knowledge of the possible dangers posed by diacetyl which may, in turn, have given rise to a duty to warn. Although Givaudan argues that the submission of such evidence is more prejudicial than probative and thus should be excluded under Rule 403, the court has balanced the probative value of such evidence in general against its possible prejudicial character and concludes that its probative value is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Accordingly, this portion of defendant Givaudan's motion is denied.

### 4.     *Evidence regarding other cases*

Defendant Givaudan next seeks to preclude the Kuipers from offering argument, evidence, or testimony regarding other lawsuits brought against or resolved by Givaudan. Defendant Givaudan asserts that such evidence is irrelevant and likely to unfairly prejudice it. Defendant Givaudan also argues that the such evidence should be excluded due to the risk of raising extraneous and confusing issues. Defendant Givaudan also contends that such evidence of settlement is inadmissible to prove liability. The Kuipers assert that while they do not intend to introduce evidence of settlements between Givaudan and microwave popcorn workers in products liability cases, they do intend to introduce evidence that Givaudan employees brought and settled workers' compensation cases for

their respiratory diseases. The Kuipers assert that several Givaudan employees filed workers' compensation claims in which they asserted that they suffered from bronchiolitis obliterans. The Kuipers contend, as they did above, that evidence that Givaudan's own employees suffered from the same disease as Ronald Kuiper and were working with the same chemicals as him is relevant to the issue of Givaudan's notice regarding the dangers associated with diacetyl. As the court noted above, evidence of Givaudan's employees health conditions is relevant to the issue of notice and Givaudan's knowledge of the possible dangers posed by diacetyl which may, in turn, have given rise to a duty to warn. Similarly, the fact that, between 1995 and 1996, employees of Givaudan brought workers' compensation claims against Givaudan alleging that they suffered from bronchiolitis obliterans, the same lung condition as Ronald Kuiper, due to their work related exposure to the same chemicals as him is relevant to the issue of notice and Givaudan's knowledge of the possible dangers posed by diacetyl which may, in turn, have given rise to a duty to warn. This finding, however, does not answer the question of the potential for unfair prejudice of evidence of the outcome of these workers' compensation proceedings against it. *See* FED. R. EVID. 403 (relevant evidence may be excluded if its probative value is outweighed by its potential for unfair prejudice). Because of the substantial difference in the standards required for recovery in workers between workers' compensation litigation from typical common law negligence actions, namely that recovery under workers' compensation law may be had regardless of negligence by the employee or the employer, the court is concerned that admission of evidence of the outcome of these workers' compensation claims may well lead to confusion of the issues to the prejudice of Givaudan. Thus, the court will permit the admission of evidence that between 1995 and 1996 employees of Givaudan brought workers' compensation claims against Givaudan alleging that they suffered from bronchiolitis obliterans but will not permit evidence of the outcome

of these workers' compensation proceedings. Therefore, this portion of defendant Givaudan's motion is granted in part and denied in part.

### 5. *Evidence of other hazardous products or substances*

Defendant Givaudan also seeks to preclude the Kuipers from offering evidence or opinions regarding other allegedly hazardous substances, such as asbestos, benzene, Agent Orange, or lead. Defendant Givaudan contends that such evidence is irrelevant and unfairly prejudicial. The Kuipers indicates that while their expert, Dr. Egilman, does make reference to asbestos, benzene, Agent Orange, and lead in his report as examples of past instances in which manufacturers were knowledgeable about the health effects of their own products, the Kuipers do not anticipate expounding about these examples other than what Dr. Egilman mentions in his report. So long as the Kuipers do so, the court does not view such isolated mention to be unfairly prejudicial. Accordingly, the Kuipers will otherwise be restricted from offering evidence or opinions regarding other hazardous substances. Therefore, this portion of defendant Givaudan's motion is granted in part and denied in part.

### 6. *Evidence of lung transplants*

Defendant Givaudan further seeks to preclude the Kuipers from offering evidence of lung transplant operations. Defendant Givaudan asserts that such evidence is irrelevant, would be inflammatory and highly prejudicial. The Kuipers indicated that they do not intend to offer such evidence. Therefore, this portion of defendant Givaudan's motion is also granted.

### 7. *Cumulative evidence*

Defendant Givaudan next requests the court to preclude the Kuipers from offering cumulative evidence regarding Ronald Kuiper's medical condition, diagnosis, prognosis and the causation of his medical condition. Defendant Givaudan contends that cumulative

medical evidence is unfairly prejudicial, confusing and misleading. The Kuipers concede that while there may be some overlap in their expert witnesses' testimony, their experts' testimony will not be cumulative.

It is within the power of the court to exclude testimony that is repetitious and cumulative of testimony already offered at trial. *Tran v. Toyota Motor Corp.,* 420 F.3d 1310, 1315 (11th Cir. 2005) (noting that part of trial court's broad authority over trial management is the power to exclude cumulative testimony); *Laurent v. Ashcroft*, 359 F.3d 59, 63 (1st Cir. 2004) (noting that "[c]ommon sense suggests that trial judges must be accorded considerable leeway in cutting off cumulative or redundant testimony, and the case law so holds."); *Leefe v. Air Logistics, Inc.*, 876 F.2d 409, 411 (5th Cir. 1989) ("It is within the power of the district court to exclude testimony that is repetitious and cumulative of testimony already before the court."); *Harvey v. Andrist*, 754 F.2d 569, 572 (5th Cir.) ("It is well established that testimony which is merely repetitious and cumulative of testimony already introduced may be excluded by the trial court in its discretion."), *cert. denied*, 471 U.S. 1126 (1985); Fed. R. Evid. 403. In *Leefe*, 876 F.2d 409, the Fifth Circuit Court of Appeals's offered the following explanation of its deferring to the trial judge's decision to exclude at trial the testimony by a second expert physician as cumulative:

> It is difficult for this court to determine the necessity and cumulative effect of testimony by several experts. For this reason, we defer to the district court who is in the best position to make these judgments. We do want to discourage attorneys from parading additional experts before the court in the hope that the added testimony will improve on some element of the testimony by the principal expert. With this caveat, nothing in this opinion should be read to impose a precise limit on the number of experts who can testify in a given area.

17

*Id.* at 411.

Here, the court will allow the Kuipers to call their medical experts. However, the court may well limit their testimony at trial to the extent that it is cumulative. Accordingly, this portion of defendant Givaudan's motion is granted in part and denied in part.

### 8.     *Non-Medical opinions of Dr. Egilman*

Defendant Givaudan also requests the court to preclude the Kuipers' expert witness, Dr. David Egilman, from offering non-medical opinions. Defendant Givaudan contends that Dr. Egilman is a zelaous advocate and not an objective expert and that, based on Dr. Egilman's prior testimony in other cases, he is likely to stray into areas of testimony that are not proper for an expert witness and will invade the role of the jury, the lawyers in this cases, as well as the court. In particular, defendant Givaudan is concerned that Dr. Egilman will testify regarding Givaudan's ethics, motivations, intentions and legal obligations. In response, the Kuipers contend that Dr. Egilman's testimony is relevant and within the scope of proper expert testimony.

### a.     *Zealous advocate or objective expert?*

Defendant Givaudan contends that Dr. Egilman's testimony will not assist the jury because he is a zealous advocate for his own personal agenda and not an objective expert. The Kuipers dispute this characterization of Dr. Egilman. In support of their position, defendant Givaudan directs the court's attention to two prior cases in which Dr. Egilman was sanctioned by courts for his contemptuous behavior. In *Ballinger v. Brush Wellman*, No. 96-CV-2532 (Colo. D. Ct. June 21, 2001), the trial court found Dr. Egilman "knowingly, deliberately, intentionally and willfully" violated a previous order of that

court prohibiting certain extrajudicial statements.[6] As a result, the court in *Ballinger* ordered that the Dr. Egilman's testimony be stricken, the jury was instructed to disregard his testimony in its entirety, and he was prohibited from offering expert testimony in any case in that court.[7] *Id.* In the other case, *In re Zyprexa Prods. Liab. Litig.*, No. 07-CV-0504 (E.D.N.Y. Sept.7, 2007), the court found that Dr. Egilman deliberately violated a protective order.[8] In that case, Dr. Egilman agreed to pay $100,000 to a charity in order to resolve possible civil and criminal contempt penalties being sought by the defendant. *See id.*

Federal Rule of Evidence 702 governs the use of expert testimony in the federal courts.[9] Under Rule 702, the first issue a court must address is whether a witness is

---

[6] A copy of the *Ballinger* order can be found at Docket No. 323-23.

[7] On appeal, the sanctions against Dr. Egilman were vacated because the sanctions order was entered against him in violation of his due process rights. *Egilman v. District Court, First Judicial District*, No. 01CA1982 at *5 (Colo. Ct. App. Sept. 5, 2002). A copy of the *Egilman* decision can be found at Docket No. 332-9.

[8] A copy of the *In re Zyprexia Prods. Liab. Litig.* order can be found at Docket No. 323-20.

[9] Federal Rule of Evidence 702 provides that:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods

(continued…)

qualified to offer expert testimony. There is no bright-line rule for determining whether a given witness is qualified to offer expert testimony. Rather, the decision is inherently fact and case specific. Nevertheless, Rule 702 provides a basic framework for evaluating a witness's qualifications by requiring that expertise must be established by one or more of the following grounds: knowledge, skill, experience, training, or education. Fed. R. Evid. 702. Courts generally construe a witness's qualifications in favor of expert status and consider gaps in a witness's qualifications a matter for the jury to consider in determining what weight to give to the testimony. *See Thomas J. Kline, Inc. v. Lorillard, Inc.,* 878 F.2d 791, 799 (4th Cir. 1989). A witness's qualifications must correspond to the subject matter of his or her proffered testimony. *See Jones v. Lincoln Elec. Co.,* 188 F.3d 709, 723 (7th Cir. 1999) ("Whether a witness is qualified as an expert can only be determined by comparing the area in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness's testimony."). In other words, a witness qualified as an expert in one subject may not offer expert testimony on another subject. A witness's general knowledge in a field, however, is normally sufficient to qualify that witness as an expert in that field's specialties as well. For example, most courts conclude that a general practitioner can offer expert testimony concerning medical conditions routinely treated by specialists. *See, e.g., Payton v. Abbott Labs,* 780 F.2d 147, 155 (1st Cir. 1985) (holding board-certified obstetrician-gynecologists were qualified to offer expert testimony in teratology, the study of abnormal development). Here, while Dr. Egilman's prior checkered past gives the court some pause, the court cannot ignore

---

[9](…continued)
  reliably to the facts of the case.

FED. R. EVID. 702.

the fact that Dr. Egilman is a physician, with a masters degree in public health, who is board certified in internal and occupational medicine with a speciality in occupational lung disease, has published dozens of articles over a wide array of health topics, and has been qualified to testify in numerous state and federal courts in the United States.[10]  *See generally Dunn v. HOVIC*, 1 F.3d 1362, 1365 (3rd Cir.) (asbestos case), *modified on other grounds*, 13 F.3d 58 (3d. Cir.), *cert. denied*, 510 U.S. 1031 (1993); *Freels v. United States R.R. Ret. Bd.,* 879 F.2d 335, 343 (8th Cir. 1989) (application for occupational disability under the Railroad Retirement Act); *Morgan v. Brush Wellman, Inc.*, 165 F. Supp.2d 704, 719-20 (E.D. Tenn. 2001) (beryllium exposure case); *Hall v. Babcock & Wilcox Co.*, 69 F. Supp.2d 716, 720-21 (W.D. Pa. 1999) (radiation exposure case); *Berger v. Amchem Prods.*, 818 N.Y.S.2d 754, 757-58 (N.Y. Sup. Ct. 2006) (asbestos case); *Lane v. Gasket Holdings, Inc.*, No. B153966, 2003 WL 21666623, at *3 (Cal. Dist. Ct. App. July 17, 2003) (asbestos case); *Chavers v. Gatke Corp.*, 132 Cal. Rptr.2d 198, 201 (Cal. Dist. Ct. App. 2003) (asbestos case); *Pittsburgh Corning Corp. v. Walters*, 1 S.W.2d 739, 774 n.9 (Tex. App. 1999) (asbestos case).  Therefore, given this record, the court concludes that Dr. Egilman is qualified to testify as an expert witness in this case. Accordingly, this portion of defendant Givaudan's motion is denied.

### b.    *Expert testimony on corporate ethics and actions*

Defendant Givaudan also contends that Dr. Egilman is not qualified to offer expert testimony regarding defendant Givaudan's corporate ethics, motives and intentions.  The Kuipers contend that Dr. Egilman is qualified to testify as to corporate documents and corporate ethics.  The court notes that Dr. Egilman does have some expertise in the area of business ethics.  Dr. Egilman has taught a college course, "Science and Power:  A

---

[10]A copy of Dr. Egilman's curriculum vitae can be found at Docket No. 332-5.

Bioethical Inquiry", which concerns, in part, the intersection of business and medicine. In addition, he has authored a number of articles regarding medical and business warning issues. That said, the difficulty the court encounters at this juncture is that defendant Givaudan has not identified any specific lines of testimony that it anticipates Dr. Egilman offering which will fall outside his expertise. As such, the court concludes that this portion of defendant Givaudan's motion is so wanting in specificity that it cannot be determined pretrial. Defendant Givaudan will, of course, have the opportunity at trial to assert this objection to Dr. Egilman's expert testimony. Therefore, this portion of defendant Givaudan's motion is denied.[11]

### 9. BASF Study

Defendant Givaudan next requests the court to preclude the Kuipers from arguing that an unpublished 1993 report from the German company BASF, entitled "Study on the Acute Inhalation Toxicity of Diacetyl FCC as Vapor in Rats 4-Hour Exposure", provided notice to Givaudan of the alleged inhalation hazards of diacetyl. Defendant Givaudan contends that such evidence is not relevant on the issue of Givaudan's notice or knowledge of any alleged inhalation hazard allegedly associated with diacetyl. The Kuipers counter that the BASF study is both relevant and admissible on the issue of whether the dangers of diacetyl were reasonably foreseeable and scientifically discoverable at the time of Ronald Kuiper's exposure to Givaudan's products.

The 1993 study at issue was preformed by BASF, the parent company of one of

---

[11]Similarly, the court denies that portion of defendant Givaudan's motion in which it seeks to preclude Dr. Egilman from offering opinions regarding Givaudan's ethics, intent and motivations on the ground that such testimony violates Federal Rule of Evidence 404. Because Givaudan has not identified any specific lines of testimony that it anticipates Dr. Egilman offering, the court finds this portion of defendant Givaudan's motion is so wanting in specificity that it cannot be determined pretrial.

Givaudan's diacetyl suppliers, Fritzsche, Dodge & Olcott. The results of the study purport to show the toxic effects of inhaled diacetyl on rats.[12] Under Iowa law, as a manufacturer, Givaudan is held to have the knowledge of an expert and therefore should have known of the hazards inherent in their products. *See Beeman v. Manville Corp. Asbestos Disease Comp. Fund*, 496 N.W.2d 247, 252 (Iowa 1993) ("As manufacturers, defendants are held to have the knowledge of experts; therefore they should have known of the hazards inherent in their asbestos products."). A duty to warn exists when a party "reasonably foresee[s] a danger of injury or damage to one less knowledgeable unless an adequate warning is given." *Beeman*, 496 N.W.2d at 252 (citing *Lakatosh v. Diamond Alkali Co.*, 208 N.W.2d 910, 913 (Iowa 1973)). Thus, reasonable foreseeability of danger to users of a product triggers the duty to warn. A manufacturer has no duty to warn when it did not or should not have known of the danger. *Moore v. Vanderloo*, 386 N.W.2d 108, 116 (Iowa 1986). Here, the court concludes that the 1993 BASF report is relevant on the issue of Givaudan's duty to warn. Therefore, this portion of defendant Givaudan's motion is denied.

### 10. *International Bakers Services litigation evidence*

Defendant Givaudan further requests the court to preclude the Kuipers from offering evidence or referring to lawsuits brought in 1986 in Indiana state court by David H. Spaulding and Daniel J. Kois, collectively the "International Bakers Litigation" and the related July 1986 NIOSH "Health Hazard Evaluation Report."[13] Defendant Givaudan contends that such evidence is irrelevant and its introduction would unfairly prejudice Givaudan. The Kuipers respond that evidence of the International Bakers Litigation and

---

[12] A copy of the 1993 BASF study can be found at Docket No. 323-33.

[13] The July 1986 NIOSH report is found at Docket No. 323-34.

the July 1986 NIOSH report are relevant and admissible on the issue of whether the dangers of diacetyl were reasonably foreseeable and scientifically discoverable at the time of Ronald Kuiper's exposure to Givaudan's products. The Kuipers also argue that this evidence is relevant to Givaudan's post sale duty to warn under Iowa Code § 668.12(2).

In 1985, the NIOSH conducted a field investigation at the International Bakers Plant in South Bend, Indiana, after two workers in that plant's mixing room developed a lung disease consistent with bronchiolitis obliterans. The report concluded, in part, that:

> [I]t is probable that some agent in the mixing room at International Bakers Services produced severe, fixed obstructive lung disease in two employees. The specific etiology was not identified.

NIOSH's July 1986 Health Hazard Evaluation Report at 4, Docket No. 323-34.

The International Bakers Litigation arose when the same two workers at the center of NIOSH's July 1986 Health Hazard Evaluation Report brought separate lawsuits against several flavor companies, including Givaudan. During that litigation, diacetyl was identified by experts as being one of the chemicals that caused or contributed to the plaintiffs lung injuries. Defendant Givaudan concedes that it was initially named as a defendant in the International Bakers Litigation but asserts that it was dismissed from that litigation because the plaintiffs determined that its flavors were not at issue. Because it is unclear from the record before the court whether defendant Givaudan was still a party to that ligation at the time diacetyl was identified as being one of the chemicals that caused or contributed to the plaintiffs' lung injuries, the court cannot determine pretrial whether evidence of the International Bakers Litigation is relevant to the issue of Givaudan's knowledge of the possible dangers of diacetyl and its duty to warn. Accordingly, this portion of defendant Givaudan's motion is denied with respect to evidence of the International Bakers Litigation.

The court also concludes that NIOSH's July 1986 Health Hazard Evaluation Report is relevant. The Kuipers indicate that Givaudan used this report when conducting an investigation at its Cincinnati facility by comparing the chemicals used at that plant with the chemicals used at the International Bakers plant. Accordingly, this portion of defendant Givaudan's motion is denied with respect to evidence of NIOSH's July 1986 Health Hazard Evaluation Report.

### 11. *Argument regarding exposure to diacetyl*

Defendant Givaudan also requests the court to preclude the Kuipers from offering evidence or argument that there is no safe level of exposure to diacetyl and that any exposure to diacetyl can cause disease. Defendant Givaudan contends that such opinion does not meet the threshold requirements for admissibility of scientific evidence, and that such argument lacks probative value and is unfairly prejudicial to Givaudan. The Kuipers contend that their experts have a scientific basis to testify that even low levels of exposure of diacetyl can cause respiratory disease. Because the court does not read the Kuipers' response to indicate that their experts will attempt to assert that there is no safe level of exposure to diacetyl, but rather will opine that exposure levels such as that endured by Ronald Kuiper can result in severe lung impairment, this portion of defendant Givaudan's motion is granted.

### 12. *Argument regarding punitive damage allocation*

Defendant Givaudan further requests the court to preclude the Kuipers from arguing or referring to the effect of the jury's specific findings on special interrogatories regarding punitive damages. Specifically, defendant Givaudan seeks to preclude the Kuipers from telling the jury of the circumstances in which a portion of any punitive damage award would be paid into a civil reparations trust fund. *See* IOWA CODE § 668A.1(2)(b). Defendant Givaudan contends that such argument is prohibited under Iowa law. *See Burke*

*v. Deere & Co.*, 6 F.3d 497, 512-13 (8th Cir. 1993), cert. denied, 510 U.S. 1115 (1994). The Kuipers contend that Givaudan overstates the holding in the *Burke* decision and that that decision does not preclude the Kuipers from informing the jury of the effect of Iowa's special interrogatories for punitive damages.

In *Burke*, 6 F.3d at 512-13, the Eighth Circuit Court of Appeals held that the trial court erred under Iowa law in instructing the jury that "if your answer to [a question regarding whether the conduct was directed at plaintiff] is no, a portion of the punitive damage award to be fixed by the court will be paid into a civil trust fund administered by this court." *Id.* Rather, the court observed that:

> Under Iowa law, it is wholly unnecessary and generally improper for the jury to be informed of the effect of specific findings on special interrogatories. *Poyzer v. McGraw,* 360 N.W.2d 748, 753 (Iowa 1985). It is also improper for counsel to direct the jury's attention to the impact of any specific findings. *Id.*

*Id.* Accordingly, the court concludes that it would be improper to permit counsel in this case to inform the jury of the effect of the special interrogatory on punitive damages, or to otherwise inform them of the circumstances in which a portion of any punitive damage award would go into a civil trust fund. Therefore, this portion of defendant Givaudan's motion is granted.

### 13.    *Bifurcation of evidence*

Defendant Givaudan also requests the court bifurcate the issue of punitive damages pursuant to Federal Rule of Civil Procedure 42(b) and that it preclude evidence of Givaudan's financial condition unless and until the jury decides the issues of liability and compensatory damages. The Kuipers have again not responded to this portion of defendant Givaudan's motion

Defendant Givaudan is correct that Rule 42(b) of the Federal Rules of Civil Procedure provides for bifurcation of trials, as follows:

> **(b) Separate Trials.** The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues, always preserving inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States.

FED. R. CIV. P. 42(b). The Eighth Circuit Court of Appeals has repeatedly held that the trial court's ruling on a motion to bifurcate "is reviewed for abuse of discretion." *Athey v. Farmers Ins. Exch.*, 234 F.3d 357, 362 (8th Cir. 2000) (citing *Equal Employment Opportunity Comm'n v. HBE Corp.*, 135 F.3d 543, 551 (8th Cir. 1998)).

Courts have recognized that many factors may be relevant to the determination of whether or not to bifurcate proceedings pursuant to Rule 42(b). *See O'Dell v. Hercules, Inc.*, 904 F.2d 1194, 1201-02 (8th Cir. 1990) ("In exercising discretion, district courts should consider the preservation of constitutional rights, clarity, judicial economy, the likelihood of inconsistent results and possibilities for confusion."); *accord Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada*, No. 4:00-CV-1073, 2006 WL 1026992, *2 (E.D. Mo. 2006) ("Multiple factors govern whether bifurcation is appropriate in any given case, including the separability of the issues; simplification of discovery and conservation of resources; prejudice to the parties; and the effect of bifurcation on the potential for settlement.") (citing *F & G Scrolling Mouse, L.L.C. v. IBM Corp.*, 190 F.R.D. 385, 387 (M.D.N.C. 1999)); *Eischeid v. Dover Constr., Inc.*, 217 F.R.D. 448, 466 (N.D. Iowa 2003) (citing *O'Dell*, 904 F.2d at 1201-02, as identifying pertinent factors, and noting,

further, that Rule 42(b) expressly identifies "expedition" and "economy" as pertinent factors). However, the key issue is whether bifurcation is necessary to avoid prejudice. *Athey*, 234 F.3d at 362 (because the movant could not show prejudice, the district court did not abuse its discretion by refusing to bifurcate claims).

The Eighth Circuit Court of Appeals has held that "[t]he decision of whether to isolate the punitive damages phase of the trial is within the sound discretion of the trial court." *Thorne v. Weld Inv., Inc.*, 197 F.3d 1206, 1213-14 (8th Cir. 1999). That court has also recognized that bifurcation of trial into separate phases to consider, first, liability and compensatory damages, and second, punitive damages, can avoid the potential that evidence pertinent to punitive damages will improperly prejudice a determination on liability and compensatory damages. *See Parsons v. First Investors Corp.*, 122 F.3d 525, 529 (8th Cir. 1997) (bifurcation of the trial in this way eliminated the risk that the liability and compensatory damages determinations were affected by counsel's improper remark made in the punitive damages phase). On the other hand, where evidence on one issue is relevant to other issues that the movant seeks to bifurcate into a separate phase of the trial, the movant is not prejudiced, and the court does not abuse its discretion in declining to bifurcate the issues. *See Equal Employment Opportunity Comm'n v. HBE Corp.*, 135 F.3d 543, 551 (8th Cir. 1998) ("The evidence of racially discriminatory conduct was relevant on issues of liability, racial animus of managers, and punitive damages. Adam's Mark was therefore not prejudiced by admission of such evidence in a single proceeding, and the district court did not abuse its discretion in declining to bifurcate the issues.") (citations omitted).

Here, the court is not persuaded by defendant Givaudan's assertions that it will be unfairly prejudiced if compensatory damages and punitive damages issues are tried in a single proceeding. *See id.* (where evidence is relevant to all pertinent issues, the party

against whom that evidence is offered is not prejudiced, and the court does not abuse its discretion by declining to bifurcate proceedings); *Athey*, 234 F.3d at 362 (the key issue for determining whether or not to bifurcate proceedings is whether a party will be prejudiced absent bifurcation). Therefore, this portion of defendant Givaudan's motion is also denied.

### E. Givaudan's Motion In Limine Regarding Mark Rigler

Defendant Givaudan has also filed a motion in limine to exclude the opinions and testimony of the Kuipers' expert witness, Dr. Mark. W. Rigler. Defendant Givaudan seeks to exclude Rigler's expert testimony pursuant to Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). In *Engineered Products Co. v. Donaldson Co., Inc.*, 313 F. Supp. 2d 951, 1009-11 (N.D. Iowa 2004), a patent case, this court considered, in some detail, the standard under *Daubert* and the Federal Rules of Evidence for admission of a scientific expert's testimony. In performing the required "gatekeeper" function, as the first step of a *Daubert* analysis, this court determined, from its review of the copious submissions in support of and resistance to the motion to exclude the expert's testimony, that the reasoning and methodology underlying the expert's testimony were scientifically valid and that the expert's reasoning and methodology could be applied to the facts in issue. *Id.* at 1011. The court also concluded that to exclude the expert's testimony and reports in that case would "'invade the province of the jury, whose job it is to decide issues of credibility and to determine the weight that should be accorded evidence.'" *Id.* at 1011 (quoting *United States v. Vesey*, 338 F.3d 913, 916-17 (8th Cir. 2003)). As to the second step in the analysis, the court found that the proposed expert testimony was relevant and would serve to aid the trier of fact. *Id.* The court also found that the case before it was one in which "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are not only traditional, but appropriate means of attacking what [the opponent of the evidence]

contend[ed] [wa]s shaky evidence." *Id.* (citing *Daubert*, 509 U.S. at 595-96).

The court reaches a similar conclusion here with regard to the challenge to Dr. Rigler's expert testimony on Rule 702 or *Daubert* grounds. Dr. Rigler's testimony appears to be based on valid reasoning and methodology, notwithstanding Givaudan's numerous contentions that Dr. Rigler's methodologies are purportedly flawed. *Id.* (first step). The court also concludes that Dr. Rigler's testimony may be rather more than marginally relevant and may serve to aid the trier of fact. *Id.* (second step). As to this step in the analysis, the court finds that this case, like *Engineered Products*, is one in which "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are not only traditional, but appropriate means of attacking what [the opponent of the evidence] contends is shaky evidence." *Id.* (citing *Daubert*, 509 U.S. at 595-96). Therefore, Dr. Rigler's expert testimony will not be excluded pretrial on *Daubert* or Rule 702 grounds.

### III. CONCLUSION

For the reasons stated above,

1.      The Kuipers' motion in limine is **denied**.

2.      Defendant Givaudan's Unified Motion in Limine is **granted in part** and **denied in part**.

3.      Defendant Givaudan's motion in limine with respect to the testimony of Dr. Rigler is **denied**.

**IT IS SO ORDERED.**

**DATED** this 7th day of February, 2009.

_____
MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA