```
                    IN THE UNITED STATES DISTRICT COURT
                     FOR THE NORTHERN DISTRICT OF IOWA
                              WESTERN DIVISION

RONALD KUIPER and                               No. C06-4009-MWB
CONLEY KUIPER,

           Plaintiffs,                          Sioux City, Iowa
                                                March 12, 2009
     vs.                                        8:50 a.m.

GIVAUDAN FLAVORS CORP.,                         VOLUME 12 OF 12

           Defendant.
                                        /


                              TRANSCRIPT OF TRIAL
                   BEFORE THE HONORABLE MARK W. BENNETT
                 UNITED STATES DISTRICT JUDGE, and a jury.
```

```
APPEARANCES:

For the Plaintiffs:      KENNETH BLAIR MCCLAIN, ESQ.
                         STEVEN EDWARD CRICK, ESQ.
                         Humphrey, Farrington & McClain
                         Suite 400
                         221 West Lexington
                         Independence, MO   64050

                         DENNIS M. MCELWAIN, ESQ.
                         Smith & McElwain
                         Suite 530
                         505 Fifth Street
                         Sioux City, IA   51101

For the Defendant:       V. THOMAS MEADOR, ESQ.
                         Morgan, Lewis & Bockius
                         Suite 2200
                         300 South Grand Avenue
                         Los Angeles, CA   90071-3132

Court Reporter:          Shelly Semmler, RMR, CRR
                         320 Sixth Street
                         Sioux City, IA   51101
                         (712) 233-3846
```

1                  (Proceedings reconvened outside the presence of the
2      jury.)
3                  THE COURT: Okay. Good morning. We have counsel
4      present in Ronald Kuiper and Conley Kuiper, Plaintiffs, versus
5      Givaudan Flavors Corporation, 06-4009.
6                  Nick, would you close the side door there, please?
7      The jury room is a long ways away, but I don't want to take any
8      chances.
9                  And there have been some developments while the jury
10     has been deliberating. And so I want to give counsel an
11     opportunity this morning to make any record based on the
12     developments that they'd like to make.
13                 So, Mr. Meador, be happy to hear from you.
14                 MR. MEADOR: Good morning. Thank you, Your Honor. I
15     have a quick four points to make here. Of course, I might think
16     of an additional few on my way.
17                 Number one, as the Court now knows, Mr. Kuiper has
18     passed away yesterday.
19                 First of all, I'd like to thank Mr. McClain for his
20     professionalism and integrity. When he learned about
21     Mr. Kuiper's death, he immediately contacted me and said we have
22     to go to the Court. In fact, we jumped in his car and came over
23     here, so I thank him for that because I think that was, number
24     one, the right thing to do.
25                 Number two, I thank the Court. You were with your

```
 1  daughter yesterday.
 2            THE COURT:  Yes.
 3            MR. MEADOR:  And I thank you for the fact you took our
 4  call and tried to help us sort through this unexpected issue,
 5  and I appreciate that.  We're -- we've all talked off the
 6  record, and we're all in uncharted territory.  None of us have
 7  had a case at least here where the plaintiff dies literally
 8  hours before the jury comes back, and it's a difficult problem.
 9            Three, I just want to tell the Court you and I share
10  something in common so strongly, and I've read a lot of your
11  writings.  I believe in the jury system.  I may have disagreed
12  with some of your rulings during trial.
13            THE COURT:  Of course.
14            MR. MEADOR:  Which I did.
15            THE COURT:  Of course you did.
16            MR. MEADOR:  You may have disagreed with the way I
17  tried the case which you did.  But the bottom line, maybe
18  because I'm an American history major and I value the
19  Constitution, we still have eight people that decide the verdict
20  in this case.  And this jury has been unbelievably attentive.
21  They've been unbelievably hard working.  I think we're day 6
22  with the jury out.  Mr. McClain and I have been having good
23  times in a hotel talking about this case while we're waiting for
24  a call.  And amazingly, a call never came with any question or
25  comments from the jury until Mr. Kuiper passed away.
```

1    If Mrs. Kuiper was here, I would give her my
2 condolences. Even though I'm a defense attorney, I have a
3 heart. I recently lost my mom, so I can't imagine what she's
4 feeling at this point in time with the stress of a trial and the
5 stress of losing her spouse.
6    Now, with all that said, as Lyndon Johnson said in the
7 1964 elections, it's with a heavy heart -- and I've never done
8 this before, but I'd like to move for a mistrial. And basically
9 I'm not going to go through all the grounds, but basically I
10 think we have problems with capacity to sue. We have problems
11 with standing. We have potentially problems with a wrong cause
12 of action.
13    We have other problems potentially related to damages.
14 If there is a punitive damage award, there's a question of
15 whether Mrs. Kuiper has standing or -- to get these damages.
16 And so I think unfortunately because of this change in events,
17 we have a situation where this case is kind of a mess through
18 no, you know, fault of the Court or Mr. McClain or my firm.
19    So anyway, as I said, this is very reluctant, but I
20 feel compelled to -- in the interest of my client to move for a
21 mistrial.
22    THE COURT: Okay. Thank you, Mr. Meador.
23    Mr. McClain?
24    MR. MCCLAIN: Your Honor, the -- Mr. Meador is right.
25 There is, to our research, no other court in Iowa that has


1 confronted this precise situation.

2       THE COURT: Is there any court anywhere in the country
3 that has that you're aware of?

4       MR. MCCLAIN: We have -- we have been looking, and we
5 haven't found any law on that issue. However, the principles
6 involved appear to be clear and reasoning from those principles.
7 We would oppose this motion.

8       I would cite the Court to the Cardamon versus Iowa
9 Lutheran Hospital case, 128 Northwest 2d 226, Iowa Supreme
10 Court, 1964 case, and the cases cited in approval thereafter
11 which -- which hold that Iowa follows a line of cases which are
12 based upon a statute which makes it clear that Iowa's law is a
13 survival statute. It's not a wrongful death statute. The
14 wrongful death statutes and the jurisdictions that are wrongful
15 death statutes based on so-called Lord Campbell's Act are cases
16 which -- are jurisdictions that find a new cause of action is
17 created upon the death of a plaintiff.

18       And, therefore, in those jurisdictions where -- that
19 follow Lord Campbell's Act, if a plaintiff dies, the cause of
20 action that he had during life dies with him and a new cause of
21 action is created in his estate.

22       Iowa is different than that result because it is a
23 survival statute which means that the cause of action that
24 existed at the time of death simply transfers over into the
25 estate of the decedent. And so every claim that the decedent

1    had at the time of his death is simply carried on by his estate.

2              And that's what this case that I just cited to you

3    holds.  It holds that the only thing that happens which is not

4    beneficial to Mr. Meador's claim is that the damages become

5    enlarged because of the death of the decedent.

6              Now, in light of our procedural posture, we do not

7    think that it's advisable or allowable to reopen the record to

8    make that item of damage available to -- for consideration by

9    the jury.  However, there's at least a colorable argument that

10   that's the only thing that should happen here.  We're not doing

11   that.

12             In regard to the exemplary damages issue, it's been

13   the longstanding rule in Iowa going back to 1897 -- and I'd cite

14   the Court to the Union Mill versus Prenzler case, 69 Northwest

15   876, 100 Iowa 540 -- that the death of the plaintiff will not

16   prevent the recovery of exemplary damages which might have been

17   recovered by the decedent himself.  So that's Iowa Supreme Court

18   law, good law, going back to 1897, still the law today.

19             So in regard to the punitive damage claim, we believe

20   that it survives and can be awarded even after the death of the

21   plaintiff.

22             So all that being said, I think that the reasonable --

23   the reasonable analogies to those cases applied to this case

24   would indicate that we allow the jury to reach a verdict, that

25   we have sufficient time to brief this thereafter.

1     But I think the net result will be, upon briefing,
2  that the jury verdict will be upheld and that the death of the
3  plaintiff should not affect that result based upon the
4  authorities we've found.
5     THE COURT: Thank you, Mr. McClain.
6     Mr. Meador, anything else you'd like to add?
7     MR. MEADOR: No, Your Honor.
8     THE COURT: When we were talking off the record,
9  Mr. Meador said it best. He had a great quote. He said this is
10 a law school exam on steroids, and I think that is so accurate.
11    So what I'm going to do is deny the motion for
12 mistrial, allow the jury to reach a verdict if they can do so.
13 And then this is obviously going to be one of many subjects on
14 post-trial motions. And I think that's clearly the best place
15 to sort it out.
16    So I'm denying the motion for mistrial but without any
17 prejudice to either side to raise whatever issues they think are
18 appropriate in light of Mr. Kuiper's death, and we'll deal with
19 those on post-trial motions.
20    And I just wanted to thank Mr. Meador for your
21 comments in preface to your motion all of which I basically
22 agreed with. And it's just a very unfortunate situation, and
23 it's clearly for me -- I mean, I'm a fairly experienced federal
24 district court judge.
25    But we are definitely in uncharted territory which is

I think the phrase you used, Mr. Meador, and I wholeheartedly endorse that and hopefully will have the time to fully sort it out on post-trial motions.

        So I appreciate, Mr. Meador, you making your record and the response from Mr. McClain. And it will add to what will surely be a very interesting post-trial motion in this case. So thank you very much.

        MR. MEADOR: Thank you, Your Honor.

        THE COURT: Thank you.

        (Recess at 9 a.m.)

        THE COURT: Thank you. Ready to have the jury brought in for the verdict?

        MR. MCCLAIN: Yes, Your Honor.

        MR. MEADOR: Yes, Your Honor.

        THE COURT: Okay. Thank you.

        (The jury entered the courtroom.)

        THE COURT: Thank you. Good morning. Haven't seen you for a while. Please be seated.

        Mr. Storm, are you the foreperson?

        JUROR STORM: Yes, Your Honor.

        THE COURT: And has the jury reached a unanimous verdict?

        JUROR STORM: Yes, Your Honor.

        THE COURT: Okay. Would you please hand the verdict form to my law clerk Nick? And I'm actually going to have Nick

1  go in and copy the form and then hand it out to the lawyers.  So
2  if you'd just be patient with us for a few minutes.
3            And let me see if I can get that sun out of your eyes.
4  That's better.
5            And even before I see the verdict, on behalf of the
6  lawyers and parties to the case, I wanted -- and on behalf of
7  all of our judges and employees of our court, I wanted to thank
8  you very much.  It obviously lasted longer than any of us
9  expected it would.  And I think you've now set a record for the
10 length of deliberations.  I know it certainly is a record in
11 civil jury trials.  And I certainly appreciate how conscientious
12 you were in your deliberations regardless of what verdict you
13 reached in the case.
14           The trial that I had that ended the day before we
15 started this case was a two-week patent trial, very, very
16 complex case, in many ways more complex than this.  It had more
17 documents, very complicated.  And the jury deliberated two
18 hours.  And I was a little bit surprised because I would have
19 bet anything that they would have needed to deliberate several
20 days to consider everything in the case.  But for whatever
21 reason, they were obviously a lot smarter than I was and the
22 lawyers because they figured out the case a lot quicker than any
23 of us did.  But I was a little bit surprised that they didn't
24 deliberate longer.  And so it was great to see how conscientious
25 you all were in this case.

```
 1            We're just going to take a minute now and review the
 2   verdict form.
 3            Could I see the lawyers at sidebar for just one
 4   second, please?
 5            MR. MEADOR:  Yes, Your Honor.
 6            THE COURT:  Thank you.
 7            (At sidebar on the record.)
 8            MR. MCCLAIN:  Isn't it exactly eight million dollars?
 9   It's exactly what I told them I would settle for, eight million
10   dollars on the nose I think.
11            THE COURT:  Well, you're reasonable.  I didn't see
12   anything inconsistent in it.  Did either of you see anything
13   inconsistent in it?
14            MR. MCCLAIN:  No.
15            THE COURT:  Okay.  Then I'll go ahead and thank the
16   jury again and send them on their way; okay?
17            MR. MCCLAIN:  Do you want them polled?
18            THE COURT:  I'll be glad to poll them.
19            MR. MEADOR:  Okay.
20            THE COURT:  Would you like me to?
21            MR. MEADOR:  I just want to make sure they voted all
22   eight on every question --
23            THE COURT:  Yes.
24            MR. MEADOR:  -- just to double-check on that.
25            THE COURT:  Well --
```

1702

1       MR. MEADOR:  I don't want to poll the whole thing.  I
2  just --
3       THE COURT:  The only thing I'm going to ask them is --
4  the only polling I do is ask them if this is their true and
5  correct verdict, so let me go through it, and I'll do my normal
6  thing.
7       MR. MEADOR:  That'd be great.  Thank you.
8       (The sidebar was concluded.)
9       THE COURT:  Here's what I'm going to do.  I always --
10 in every civil and criminal case, I poll the jury just to make
11 sure just as kind of a double final check that this is your
12 accurate verdict.
13      And so I'm going to go through and kind of read the
14 verdict to all of you.  And even though I have you individually
15 sign it which is unique -- and I've been doing that for over a
16 decade now, but I'm going to go through the verdict form.  And
17 then I'm going to ask each juror a very simple question, and the
18 question is, is this your true and correct verdict.  And so the
19 answer is either yes or no.
20      And Count -- Roman numeral 1 of the verdict form, the
21 Kuipers' claims, on each of the Kuipers' claims, in whose favor
22 do you find?  (a) would be the defective design.  You found in
23 favor of the Kuipers.  (b) would be the failure to warn.  You
24 found in favor of the Kuipers.  (c) would be the failure to
25 test.  You found in favor of the Kuipers.  And (d) would be the

Case 5:06-cv-04009-MWB-PAZ   Document 414   Filed 06/09/09   Page 12 of 17

1  loss of spousal consortium on behalf of Conley Kuiper, and you
2  found in favor of the Kuipers.
3      And then on step 2, compensatory damages, past medical
4  expenses, $50,000; future medical expenses reduced to present
5  value, $500,000; past loss of function of mind and body,
6  $750,000; future loss of the function of mind and body reduced
7  to present value, 2 million dollars; past pain and suffering,
8  $750,000; future pain and suffering reduced to present value, 2
9  million dollars.
10     Then on the loss of spousal consortium, the reasonable
11 value of past loss of spousal consortium, $500,000; the
12 reasonable value of future loss of spousal consortium, 1 million
13 dollars.
14     Step 3, punitive damages, no punitive damages awarded
15 on any count.
16     And then Givaudan's defenses: Untimeliness, no; state
17 of the art, no; sophisticated user, no; comparative fault, no.
18 Percentage of fault to Ron Kuiper, zero.
19     No percentage of fault -- no with regard to the fault
20 of released parties. And then fault of Givaudan, 100 percent,
21 total percentage of fault assigned, 100 percent dated 9:05,
22 today's date, 3-12-09.
23     And we'll just start in the back of the row with
24 Mr. Woodward. Is this your true and correct verdict?
25         JUROR WOODWARD: Yes, it is, sir.

```
 1                THE COURT:  Next juror, please.
 2                JUROR DAMSTRA:  Yes.
 3                THE COURT:  Next, please.
 4                JUROR SCHIEUER:  Yes.
 5                THE COURT:  Next, please.
 6                JUROR STORM:  Yes.
 7                THE COURT:  Front row, please.
 8                JUROR CORK:  Yes.
 9                JUROR GREEN:  Yes.
10                JUROR RICKERT:  Yes.
11                JUROR BESCHORNER:  Yes.
12                THE COURT:  Okay.  On behalf of all of the parties and
13   all of the lawyers who worked so hard in this case and
14   personally I just wanted to thank you so much for your
15   incredibly conscientious deliberations.  I have great faith in
16   the jury system.  I think it's just a wonderful institution.
17   And there's something about the collective wisdom of eight
18   people that is always so much better than the wisdom of any one
19   person, particularly me.
20                And so I'm very glad that the jury decided this case.
21   And you just have my utmost respect and deepest appreciation for
22   your incredibly hard work.
23                I know you're all anxious to get going.  You spent a
24   bigger chunk of your life at the United States Courthouse than
25   you thought you would.  And I'm just going to meet you
```

1  downstairs and pass out these juror evaluation forms.
2              So again, on behalf of everybody associated with our
3  court, thank you very, very much.
4              MR. MEADOR:  Your Honor, before you discharge the
5  jury --
6              THE COURT:  Yes.
7              MR. MEADOR:  -- I'd just personally like to thank the
8  jury.
9              THE COURT:  Absolutely.
10             MR. MEADOR:  Probably the hardest-working jury I've
11 ever seen in my entire career.  We actually thought maybe you
12 had a good buffet down there and you wanted to come back every
13 day, but we appreciate your hard work.
14             But I also -- the reason why I wanted you to tell the
15 jurors about it at their election that they can talk to the
16 attorneys after the case.  Could you just explain that to them?
17             THE COURT:  Oh, yes.  Thank you very much, Mr. Meador,
18 for reminding me of that.
19             I allow the lawyers to call you up.  You know,
20 notwithstanding the fact that hopefully you'll all fill out
21 these questionnaires, mail them into us -- and we take each part
22 for each lawyer and mail it to that lawyer.  But I allow the
23 lawyers to contact you because lawyers work very, very hard at
24 their craft.  And they are always trying to do a better job in
25 their next trial.  And they can get important feedback from you

as jurors.

So here are just some of the rules.  You don't have to talk to the lawyers if they call you, but I would encourage you to do so.  And I'd ask you as a personal favor to take a little bit of time and answer the lawyers' questions but only if you want to.

Secondly, you shouldn't reveal any -- anything that was discussed in your deliberations by anyone else because that's considered to be kind of secret and sacrosanct, and so we want to respect the confidentiality of the jurors' deliberations.

Thirdly, if there's a question that you feel is inappropriate or for whatever reason you don't want to answer that specific question, you obviously have the right to answer the questions you want to, not answer any question that for whatever reason would make you uncomfortable or for whatever reason you simply don't want to answer it.

And, of course, if you decide that you've had enough of our federal court and you don't want to talk to anybody afterwards, you have that right too.  But I would encourage you to talk to the lawyers because these are hard-working, good, well-meaning lawyers, and they're just trying to get better at their craft.  And juror input is exceedingly helpful.

So anything further from the plaintiff?

MR. MCCLAIN:  No, Your Honor.

```
1              THE COURT:  Okay.  Thank you.  We'll be in recess.
2              (The foregoing trial was
3              concluded at 9:33 a.m.)
```

20                            CERTIFICATE

21      I certify that the foregoing is a correct transcript
22 from the record of proceedings in the above-entitled matter.

25      S/Shelly Semmler                          4-4-09
        Shelly Semmler, RMR, CRR                   Date